**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

LORENZO LAMAR KELLON                                    PETITIONER
ADC # 165224

VS.                              NO. 5:18-CV-00165-JM-JTR

DEXTER PAYNE,[1] Director,
Arkansas Department of Correction                      RESPONDENT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent

to United States District Judge James M. Moody, Jr. You may file written objections

to all or part of this Recommendation.  If you do so, those objections must: (1)

specifically explain the factual and/or legal basis for your objection; and (2) be

received by the Clerk of this Court within fourteen (14) days of this

Recommendation.  By not objecting, you may waive the right to appeal questions of

fact.

## I.  Introduction

On September 22, 2016, a Jefferson County jury convicted Lorenzo Kellon

("Kellon") of capital murder and aggravated robbery for killing a Pine Bluff

---

[1]  Dexter Payne replaced Wendy Kelley as the prison director on or about July 26, 2019.
Payne is automatically substituted as the Respondent pursuant to Fed. R. Civ. P. 25(d).

convenience store clerk and then stealing $550 from the cash register. *Kellon v. State*, Jefferson County Cir. Ct. Case No. 35CR-15-448; Sentencing Order, *Doc. 9-2 at 1*. Kellon was sentenced to life, without parole, for capital murder;[2] 40 years for aggravated robbery; and 15 years based on a statutory firearm enhancement. *Id*.

On direct appeal to the Arkansas Supreme Court, Kellon argued the trial court erred in: (1) refusing to suppress his confession; (2) refusing to accept his proposed modifications to the jury instructions; and (3) giving an erroneous and prejudicial jury instruction on capital felony murder, with the lesser-included offense of first-degree felony murder. Appellant's Brief, *Doc. 9-3*. On February 15, 2018, the Court rejected Kellon's arguments and affirmed his convictions. *Kellon v. State*, 2018 Ark. 46, at 1, 538 S.W.3d 206, 207 (2018).[3]

Kellon did not file a Rule 37 Petition.

On June 26, 2018, Kellon initiated this § 2254 habeas action. *Doc. 1*. Liberally construing his habeas Petition, he makes the following claims:

---

[2] The state waived the death penalty prior to Kellon's trial. *See* Notice of Waiver of Death Penalty (July 28, 2016), *Doc. 31, Tr. Trans. Vol. 1 at 308*.

[3] In rejecting Kellon's claim that his confession was involuntary, the Court concluded that: (1) the detectives who interrogated Kellon made no clear promises of leniency; (2) the evidence did not show Kellon was particularly vulnerable at the time of the confession; and (3) based on the totality of the circumstances, the trial court did not clearly err in refusing to suppress his confession. *Kellon*, 2018 Ark. 46, at 2-4, 538 S.W.3d at 207-208. The Court rejected Kellon's jury instruction claim because the challenged instruction, which required the jury to consider the capital murder charge, before reaching the lesser-included first-degree felony murder charge, was not an abuse of discretion. *Id*., 2018 Ark. 46, 4-6, 538 S.W.3d at 208-209.

2

Claim 1 The trial court lacked both personal and subject matter jurisdiction to try him because the criminal information was inadequate.[4] *Id. at 5-29, 37-53*.

Claim 2 His trial counsel provided constitutionally ineffective assistance by failing to challenge the trial court's jurisdiction, based on the inadequacies in the criminal information. *Id.*

Claim 3 The evidence was constitutionally insufficient to sustain his convictions for capital felony murder and aggravated robbery. *Id. at 31-33*.

Claim 4 His trial counsel provided constitutionally ineffective assistance by failing to properly challenge the sufficiency of the evidence in moving for directed verdict. *Id.*

Claim 5 The trial court erred in refusing to adopt his proffered modifications to the model jury instructions and giving an instruction on capital felony murder, with first-degree murder as a lesser-included offense, in violation of his due process rights. Kellon's Reply, *Doc. 12 at 5-6*.

Claim 6 The trial court erred in admitting his involuntary confession, in violation of his Fifth Amendment rights. *Id. at 1-7*.

In Respondent's Response, he argues that Kellon's habeas Petition should be dismissed because: (1) he procedurally defaulted Claims 1 through 4;[5] and (2)

---

[4] Kellon claims the trial court "lacked jurisdiction" because: (1) he was not indicted by a grand jury; (2) the criminal information was signed by a deputy prosecutor, rather than the elected Prosecutor; and (3) he did not receive a copy of the criminal information informing him of the "exact nature" of the charges at his arraignment. *Doc. 1 at 5-29, 37-53*.

[5] Respondent also argues that Claims 1 and 2 involve issues of state law that are not cognizable in a § 2254 habeas action.

Claims 5 and 6 were reasonably adjudicated by the state courts. *Doc. 9.* Kellon has filed a Reply which makes additional arguments in support of his habeas Petition. *Doc. 12.*[6]

For the reasons explained below, the Court recommends that all of the claims asserted in this § 2254 habeas Petition be denied and the case be dismissed, with prejudice.

## II. Discussion

Before addressing Kellon's habeas claims, it is important to understand the evidence supporting Kellon's capital murder and aggravated robbery convictions.[7]

Shortly before 8:30 p.m. on June 22, 2015, Kellon drove into the parking lot of the Big Red convenience store on East Harding Street in Pine Bluff, Arkansas. *Surveillance Camera 1 at 19:20:44.* He was driving a bronze-colored four-door Cadillac sedan, which he parked by one of the gas pumps. *Id.* Kellon's passenger,

---

[6] Kellon has also filed nineteen motions, fourteen of which have been previously decided. Because the Court recommends dismissing this habeas action, with prejudice, Kellon's five pending motions should be denied, as moot.

[7] The multi-volume state court record includes: (1) the seven-volume trial court record; (2) two audio recordings of Kellon's custodial interview following his arrest, in which he confessed to the crime; (3) an audio recording of a telephone call between Kellon and his mother following his statement to the detectives; and (4) videos from the convenience store's surveillance cameras that were positioned inside and around the perimeter of the store, which captured the event. *Doc. 31.*

Sha'Quille Carter,[8] went inside the store, looked around, bought a drink, and returned to the car. *Id. at 19:23:19-19:24:42*; *Surveillance Camera 6 at 19:23:39-19:24:29*.

Kellon then exited the car, holding a pistol and wearing a silver mask, with a black hood. *Surveillance Camera 1 at 19:25:09*. He walked from the car to the side of the store where one of the store clerks, Hardip Singh, was smoking a cigarette, and shot him three times. *Id. at 19:25:09-19:25:19*. One bullet struck Singh in the head, one grazed his cheek, and the other hit him in the back. *Trial Testimony of Dr. Charles Kokes from the Arkansas State Crime Lab*, *Tr. Trans. Vol. 4 at 1071*. Singh died where he fell.

The other store clerk was stocking items in the back of the store when he heard gun shots and ducked down behind an aisle. He remained there throughout the robbery. *Surveillance Camera 7 at 19:25:22-19:26:07*.

Kellon entered the store, opened the cash drawer, and stole approximately $550. *Surveillance Camera 6 at 19:25:21-19:25:53*. He then walked back to the Cadillac and drove away. *Surveillance Camera 1 at 19:25:53-19:26:07*.

The next day, a Pine Bluff police officer saw a bronze-colored Cadillac parked outside a different convenience store in Pine Bluff. *Trial Testimony of Officer Jason*

---

[8] On December 12, 2017, Carter pleaded no contest to second-degree murder and robbery in exchange for a twenty-year sentence. *See State v. Carter*, Jefferson County Cir. Ct. No. 35CR-15-447-5 (accessible at https://caseinfo.aoc.arkansas.gov).

*Howard*, *Tr. Trans. Vol. 4 at 1111*. A male exited the store and walked back to the car. *Id. at 1112-1115*. The officer followed the car to an abandoned house, reported his position, and requested backup. Other officers arrived, who took Kellon into custody and drove him to the Pine Bluff Police Department.

After being advised of his *Miranda* rights, two detectives questioned Kellon. *Trial Testimony of Detective Cassandra McAfee*, *Tr. Trans. Vol. 5 at 1242-1245*. Twenty minutes into their questioning, Kellon confessed to killing Singh and robbing the convenience store. *Id. at 1274-1276*; *Kellon Statement 1*.

### A.    Kellon Has Procedurally Defaulted Claims 1, 2, 3, and 4

A habeas petitioner must first "fairly present" his claims in state court *before* seeking § 2254 relief in federal court. *Murphy v. King*, 652 F.3d 845, 848-49 (8th Cir. 2011); 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus . . . shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State[.]"). A petitioner must present the substance of his federal habeas claim not only in the state trial court, but also in "one complete round of the State's established appellate review process." *Murphy*, 652 F.3d at 848-49; *Grass v. Reitz*, 643 F.3d 579, 584-85 (8th Cir. 2011).

By exhausting all available state court remedies, a habeas petitioner gives the State that convicted him an "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365

(1995) (per curiam).  When a petitioner fails to fully exhaust his claims in state court and the time for doing so has expired, his claims are procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).

Because Kellon did *not* raise the issue of the trial court's alleged lack of jurisdiction based on inadequacies in the criminal information, *either at trial or on direct appeal*, he procedurally defaulted Claim 1.  *See Beaulieu v. Minnesota*, 583 F.3d 570, 574 (8th Cir. 2009) (holding that petitioner procedurally defaulted his jurisdictional claim by failing to raise it with Minnesota state courts); *Smith v. State*, 2016 Ark. 201, 4, 491 S.W.3d 463, 466 (2016) (even if an information were insufficient, the jurisdiction of the trial court would not be implicated); *Jones v. State*, 2009 Ark. 308 (2009) (the insufficiency of an information must be challenged prior to trial or any constitutional basis for appellate review will be waived).  Thus, Kellon is now attempting to raise Claim 1 *for the first time* in this federal habeas action.

Similarly, Claim 3 is procedurally defaulted because, although Kellon's trial attorney moved for directed verdict, based on insufficiency of the evidence, he failed to raise that argument on direct appeal.  *Kellon*, 2018 Ark. 46, 538 S.W.3d 206.  *See Mills v. State*, 2010 Ark. 390, at *1, 2010 WL 4156339 (Ark.) (challenges to the sufficiency of the evidence must be raised on direct appeal).

Finally, Claims 2 and 4 raise ineffective assistance of trial counsel claims, which Kellon was required to raise with the trial court, in a Rule 37 Petition, and then appeal to the Arkansas Supreme Court. *Armstrong v. Iowa*, 418 F.3d 924, 925-26 (8th Cir. 2005). Because Kellon did *not* file a Rule 37 Petition and the time for doing so has long since passed,[9] he is also attempting to raise both of those claims, *for the first time*, in this federal habeas action. Accordingly, Kellon has also procedurally defaulted Claims 2 and 4.

**B.** **Kellon Has Failed to Establish "Cause" to Excuse His Procedural Default of Claims 1, 2, 3, and 4**

When a procedural default occurs, federal habeas review of the claim is barred unless the prisoner can demonstrate: (1) "cause" for the default *and* "actual prejudice" resulting from the alleged violation of federal law;[10] *or* (2) a "fundamental miscarriage of justice" will take place if the Court fails to consider the claim.[11] *Coleman*, 501 U.S. at 750.

---

[9] Kellon had until May 8, 2018, sixty days from the entry of the Arkansas Supreme Court's Mandate affirming his convictions on direct appeal, to file a Rule 37 Petition. *See* Ark. R. Crim. P. 37.2 (when a direct appeal is taken, a Rule 37 petition must be filed in the circuit court within sixty days of the date the mandate is issued by the appellate court).

[10] If a petitioner cannot establish "cause" for the procedural default, there is no reason for a habeas court to address prejudice. *Murphy*, 652 F.3d at 850.

[11] Kellon does not allege, much less put forward, any new, reliable evidence of actual innocence to support his claim that his conviction constituted a "fundamental miscarriage of justice." *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) (where constitutional violation "has probably resulted in the conviction of one who is actually innocent, a federal court may grant the writ even in the absence of a showing of cause for the procedural default."); *Oglesby v. Bowersox*, 592 F.3d 922, 926 (8th Cir. 2010) ("a habeas petitioner [must] present new evidence that

As "cause" to excuse his procedural default of Claim 1, Kellon blames his attorney for failing to file a motion to dismiss or otherwise challenging the jurisdiction of the trial court based on the alleged inadequacies in the criminal information. *Doc. 1 at 16, 19*. Similarly, Kellon tries to excuse his procedural default of Claim 3 by blaming his attorney for failing to make a proper motion for directed verdict to preserve the argument that the evidence was not sufficient to support his convictions for capital murder and aggravated robbery. *Id. at 31-33*.

While ineffective assistance of trial counsel may constitute "cause" to excuse a procedural default, such a claim *must first be raised in state court*. *See Edwards v. Carpenter*, 529 U.S. 446, 450-53 (2000). Under Arkansas law, ineffective assistance of trial counsel claims must be raised in a timely Rule 37 Petition. *Wooten v. State*, 2018 Ark. 198, at 3, 547 S.W.3d 683, 685 (2018). After his direct appeal was affirmed by the Arkansas Supreme Court, Kellon did *not* file a Rule 37 Petition. Accordingly, his trial attorney's alleged ineffectiveness cannot constitute "cause" to

---

affirmatively demonstrates that he is innocent of the crime for which he was convicted") (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)); *Embrey v. Hershberger*, 131 F.3d 739, 741 (8th Cir. 1997) ("in noncapital cases the concept of actual innocence is easy to grasp, because it simply means the person didn't commit the crime"); *Kidd v. Norman*, 651 F.3d 947, 953 (8th Cir. 2011) (habeas petitioner must "come forward not only with new reliable evidence which was not presented at trial, but . . . come forward with new reliable evidence which was not available at trial through the exercise of due diligence.").

excuse *his* procedural default of Claims 1 and 3, based on *his own failure* to file a Rule 37 Petition. *Edwards*, 529 U.S. at 450-454.[12]

Finally, Kellon argues that the trial court's failure to inform him of his post-trial rights[13] constitutes "cause" sufficient to excuse his procedural default of Claims 1, 2, 3, and 4. Kellon's argument is unavailing for two reasons.

First, the state trial court *explicitly advised Kellon of his right to direct appeal*:

> Court:    . . . You have a right to appeal all of these sentences. You need to file your notice of appeal within 30 days from today. Tomorrow is day one. And 30 days thereafter you must file your notice. Then the rest of it – that won't be completing the appeal. That would only be noticing the appeal. And then you would have to perfect the appeal. Your attorneys will be able to tell you more of the steps and procedures that must be gone through to perfect the appeal. The key point, however, is if you are going to appeal, you need to file that notice within 30 days. And then everything else will get on a time schedule after that. But if you miss filing the notice, that all goes out the window as far as appeals are concerned. Do you understand?

> Kellon:  Yes, sir, I do understand.

> Court:    Do you have any questions concerning anything that have gone on here this afternoon?

---

[12] Because Kellon did *not* file a Rule 37 Petition, he cannot rely on the equitable exception created in *Martinez v. Ryan*, 566 U.S. 1 (2012), to save his ineffective assistance of counsel claims, Claims 2 and 4. *See Lovelace v. Kelley*, No. 5:18-CV-05, 2019 WL 4281965, at *7 (E.D. Ark. July 3, 2019), report and recommendation adopted, No. 5:18-CV-05, 2019 WL 4296154 (E.D. Ark. Sept. 10, 2019); *Johnson v. Kelley*, No. 518CV00079, 2018 WL 5993826, at *4 (E.D. Ark. Oct. 15, 2018), report and recommendation adopted, No. 5:18-CV-79, 2018 WL 5985684 (E.D. Ark. Nov. 14, 2018) (citing *Lane v. Kelley*, No. 5:16-CV-355, 2017 WL 5473925, at *4 (E.D. Ark. Nov. 14, 2017), report and recommendation adopted, No. 5:16-CV-355, 2017 WL 6542748 (E.D. Ark. Dec. 21, 2017).

[13] Kellon claims that *the trial court* did "not inform[]" him of his right to a direct appeal and other unspecified "rights" at the sentencing phase of his trial, which included his right to pursue Rule 37 relief. *Doc. 1 at 23*.

10

Kellon:  Naw.

*Doc. 31, Trial Trans. Vol. 7 at 1588-1589.*

Second, a state trial court is *not* constitutionally obligated to inform a defendant of his post-conviction rights.[14]  *See also, Novak v. Purkett*, 4 F.3d 625, 627 (8th Cir. 1993) (citing *Pinson v. Morris*, 830 F.2d 896 (8th Cir. 1987) (trial court's failure to inform defendant of his right to direct appeal not a constitutional violation); *see also Johnson v. Kelley*, No. 5:18-CV-00079DPM-PSH, 2018 WL 5993826, at *3 (E.D. Ark. Oct. 15, 2018), report and recommendation adopted, No. 5:18-CV-79-DPM, 2018 WL 5985684 (E.D. Ark. Nov. 14, 2018) (quoting *Shoemate v. Norris*, 2003 WL 23989923 at 4 (E.D. Ark. 2003) (Wilson, J.), aff'd, 390 F.3d 595 (8th Cir. 2004) ("there is no constitutional right to collaterally attack a final judgment of conviction in the first place.")).

Furthermore, it is well-settled that a habeas petitioner's procedural ignorance, without more, *cannot* establish the necessary "cause" to excuse the procedural default of a federal habeas claim.  *Townsell v. Kelley*, 678 F. App'x 458, 459 (8th Cir. 2017) (unpublished); *United States v. Shoupe*, 299 F. App'x 610, 611 (8th Cir. 2008) (unpublished) (citing *Smittie v. Lockhart*, 843 F.2d 295, 298 (8th Cir.1988)

---

[14]  To the extent Kellon is arguing that the trial court failed to inform him of his right to pursue Rule 37 relief, under *state law*, that claim is *not* cognizable in a federal habeas action. *See Evenstad v. Carlson*, 470 F.3d 777, 782-783 (8th Cir. 2006); 28 U.S.C. § 2254(d)(1).

11

(petitioner's *pro se* status and limited educational background are not sufficient cause for failing to pursue state-court remedies); *Sherron v. Norris*, 69 F.3d 285, 289 (8th Cir. 1995); *Cornman v. Armontrout*, 959 F.2d 727, 729 (8th Cir. 1992).

Accordingly, because Kellon has procedurally defaulted Claims 1 through 4, the Court should not consider them and those claims should be dismissed, with prejudice.

### C.    Arkansas State Courts Reasonably Adjudicated Kellon's Jury Instruction Objection, Which Did Not Rise to the Level of a Constitutional Violation

Kellon argues that the trial court erred in overruling his objection to the jury instruction on Capital Felony Murder / First-Degree Felony Murder, Arkansas Model Criminal Instruction ("AMCI") 301.    Specifically, Kellon argues this instruction "prevented" the jury from convicting him of the lesser-included offense of first-degree felony murder.  *Doc. 12 at 6*.   Respondent argues the Arkansas Supreme Court reasonably determined, under Arkansas law, that the jury instruction claim lacked merit.  *Doc. 9 at 7*.

A federal habeas court cannot grant relief on a claim adjudicated on the merits by a state court unless a state court's decision "was contrary to, or involved an unreasonable application of, clearly established federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). A state court decision is "contrary

to" clearly established federal law if it is in conflict with a decision of the United States Supreme Court on a question of law, or reaches a result that is contrary a decision of the United States Supreme Court on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court decision involves an "unreasonable application" of federal law when it identifies the correct legal rule, but unreasonably applies it to the facts. *Id.* at 407. "A state court's application of clearly established federal law must be objectively unreasonable, not merely incorrect, to warrant the granting of a writ of habeas corpus." *Jackson v. Norris*, 651 F.3d 923, 925 (8th Cir. 2011).

Finally, in a federal action, a state court's findings of fact are presumptively correct and the habeas petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Stenhouse v. Hobbs*, 631 F.3d 888, 891 (8th Cir. 2011) (quoting 28 U.S.C. § 2254(e)(1)).

Under Arkansas law, when capital felony murder is charged, an instruction on first-degree felony murder, as a lesser-included offense, is also required because "the same evidence used to prove the former of necessity proves the latter." *Hill v. State*, 303 Ark. 462, 469, 798 S.W.2d 65, 69 (1990). A person commits capital murder if "the person commits . . . aggravated robbery . . . and . . . [i]n the course of and in furtherance of the [aggravated robbery], . . . the person . . . causes the death of a person under circumstances manifesting extreme indifference to human life." Ark.

Code. Ann. §§ 5-10-101.  Similarly, a person commits first-degree felony murder if "the person commits . . . a felony [including aggravated robbery] and in the course of or in furtherance of the felony[,] . . . the person . . . causes the death of any person under circumstances manifesting extreme indifference to the value of human life." Ark. Code Ann. § 5-10-102.  The penalty for capital felony murder is either death or life without parole. Ark. Code Ann. § 5-10-101(c)(1).  The penalty for first-degree felony murder is not less than 10 years, nor more than 40 years, *or* life.  Ark. Code Ann. §§ 5-10-102(c)(1); 5-4-401(a)(1).  Because the state waived the death penalty prior to trial, Kellon faced a mandatory sentence of life, without parole, on the capital felony murder charge.  On the lesser-included offense of first-degree felony murder, he faced a *potentially* much shorter sentence.

At trial, Kellon's attorney generally objected to the court's jury instructions on capital felony murder / first-degree felony murder, which tracked the Arkansas Model Criminal Instructions; offered modifications to those instructions; and specifically objected to AMCI 2d 301 and 302, which he claimed made it impossible for the jury to convict Kellon of the lesser-included offense of first-degree felony murder, without first considering and *acquitting him* of capital felony murder.  *Tr. Trans. Vol. 6 at 1391-1392.*  The trial court overruled these objections, as modified by Kellon's attorney.

14

The jury instructions, as given by the trial court, are set forth below:

[AMCI 2d 301]

Lorenzo Kellon is charged with capital murder. This charge includes the lesser offense of murder in the first degree. You may find the defendant guilty of one of these offenses or you may acquit him outright.

If you have reasonable doubt of the guilt of the defendant on the greater offense, you may find him guilty only of the lesser offense. If you have a reasonable doubt as to the defendant's guilt on all offenses, you must find him not guilty.

[AMCI 2d 1001]

Lorenzo Kellon is charged with the offense of capital murder. To sustain this charge, the State must prove the following things beyond a reasonable doubt: First, that Lorenzo Kellon committed or attempted to commit the crime of aggravated robbery; and, Second, that in the course and in furtherance of that crime or attempt, or in immediate flight therefrom, Lorenzo Kellon caused the death of Hardip Singh under circumstances manifesting extreme indifference to the value of human life.

[AMCI 2d 1001-A]

As part of the charge of capital murder, the State contends that the death of Hardip Singh occurred during the commission of, or attempted commission of, the crime of aggravated robbery by Lorenzo Kellon, or in immediate flight therefrom.

To prove aggravated robbery, the State must prove beyond a reasonable doubt, first, that with the purpose of committing a theft or resisting apprehension immediately thereafter, Lorenzo Kellon employed or threatened to immediately employ physical force upon another person; and, second, that Lorenzo Kellon was armed with a deadly weapon or represented by word or conduct that he was so armed with a deadly weapon or he inflicted or attempted to inflict death or serious physical injury upon another person. If the crime of aggravated robbery is not proved to have been committed or attempted by Lorenzo Kellon, he is not guilty of capital murder.

[legal definitions omitted]

[AMCI 2d 302]

If you have reasonable doubt of the defendant's guilt on the charge of capital murder, you will then consider the charge of murder in the first degree.

[AMCI 2d 1002]
To sustain the charge . . . of murder in the first degree, the State must prove beyond a reasonable doubt: First, that Lorenzo Kellon committed or attempted to commit aggravated robbery; and, second, that in the course and in furtherance of that crime or attempt or in immediate flight therefrom, Lorenzo Kellon caused the death of Hardip Singh under circumstances manifesting extreme indifference to the value of human life.

[AMCI 2d 1002-A]
As part of the lesser included offense of murder in the first degree, the State contends that the death of Hardip Singh occurred during the commission of, attempt commission by Lorenzo Kellon of the crime of aggravated robbery or in immediate flight therefrom.

To prove the crime of aggravated robbery, the State must prove beyond a reasonable doubt, first, that with the purpose of committing a theft or resisting apprehension immediately thereafter, Lorenzo Kellon employed or threatened to immediately employ physical force upon another person and that Lorenzo Kellon was armed with a deadly weapon or represented by word or conduct that he was armed with a deadly weapon or he inflicted or attempted to inflict death or serious physical injury upon another person.
If the crime of aggravated robbery is not proved to have been committed or attempted by Lorenzo Kellon, he is not guilty of murder in the first degree.

*Tr. Trans. Vol. 6 at 1417-1421.*

Importantly, as part of its overall instructions, the trial court told the jury to "accept and follow [the instructions] as a whole, not singling out one instruction to the exclusion of others." *Tr. Trans. Vol. 6 at 1412.*

On direct appeal, Kellon's attorney renewed his challenge to the capital felony murder / first-degree felony murder jury instructions. The Arkansas Supreme Court rejected this argument and affirmed the trial court's use of the model jury instructions, including AMCI 2d 301 and 302, which specifically addressed how the

16

jury should consider the capital murder charge and lesser-included offense of first-degree felony murder.[15]  *Kellon*, 2018 Ark. 46, at 6, 538 S.W.3d at 209.

Justice Wynne filed a concurring opinion, and Justice Hart filed a dissent. *Kellon*, 2018 Ark. 46, at 6-8, 538 S.W.3d at 209-211 (Wynne, J., concurring, and Hart, J., dissenting). According to both of those Justices, Kellon's jury instruction challenge was *distinguishable* from the one involved in *Hill*.

In her dissent, Justice Hart concluded that Kellon's proposed jury instructions "were reasonable and . . . the trial court failed to give them due consideration,  and . . . this error was extremely prejudicial to Kellon's rights[.]" *Id*.  Accordingly, Justice Hart believed Kellon's conviction should be overturned and he should be given a new trial.  Justice Wynne, in his concurrence, was unwilling to go that far.  He believed the purported ambiguities in the model instructions did not support the reversal of Kellon's convictions, but were something that "the Committee on Criminal Jury Instructions should consider revising[.]" *Id*.

In *Williams v. Norris*, 576 F.3d 850 (8th Cir. 2009), the Court held that, while the Arkansas capital felony murder and first-degree felony murder statutes impose

---

[15]  Part of its reason for rejecting Kellon's argument was because the Court construed it to be the *same argument* it had previously rejected in *Hill v. State*, 344 Ark. 216, 40 S.W.751 (2001). There, the defendant challenged the use of AMCI 2d 302, which the Court determined was a challenge to the way the capital felony murder statute overlapped with the first degree felony murder statute. The Court rejected Hill's argument that the instructions were too vague and allowed a prosecutor to arbitrarily charge a defendant under either one.  *Id.* at 227, 40 S.W.3d at 757.

17

different penalties for the same act, together they do not offend due process because each statute unambiguously specifies the conduct prohibited and the penalties authorized upon conviction, thereby satisfying the fair notice requirements of the due process clause. *Id.* at 869 (citing *Simpson v. Lockhart*, 942 F.2d 493 (8th Cir. 1991)). In considering Kellon's constitutional challenge to the AMCI instruction for capital felony murder, with first-degree felony murder as a lesser-included offense, it is important to note that the Eighth Circuit has held an error in a jury instruction can only rise to the level of a due process violation if it is sufficiently egregious. *See Robinson v. LaFluer*, 225 F.3d 950, 954 (8th Cir. 2000) ("Habeas corpus relief may be granted only when an erroneous jury instruction constituted a fundamental defect that resulted in a complete miscarriage of justice, or an omission inconsistent with rudimentary demands of a fair trial.").

Kellon argues the jury instructions given by the trial court resulted in a complete miscarriage of justice because they *required* the jury to first *acquit* him of capital felony murder before they could consider the lesser-included offense of first-degree felony murder. *Doc. 12 at 6*. For the reasons explained below, the Court concludes this argument is without merit.

In AMCI 2d 302, the jury was explicitly instructed that, if it had "reasonable doubt" about whether Kellon committed capital murder, it could consider whether Kellon was guilty of the lesser-included offense of first-degree felony murder. *See*

*Blueford v. Arkansas*, 566 U.S. 599 (2012) (the jury is always free to reconsider its determination on any charge while deliberations are ongoing). This instruction allowed any juror, who had reasonable doubt about whether Kellon committed capital murder, to open the floor for a discussion about whether Kellon was guilty of the lesser-included offense of first-degree murder. Fairly read, it is at best disingenuous for Kellon to argue this instruction meant the jury was required to vote to acquit him of capital murder *before* it could consider the lesser-included offense.

Finally, Kellon's jury instruction claim fails for a far more fundamental reason: the Eighth Circuit has explicitly held that a habeas petitioner has no due process right to even claim he was entitled to the lesser-included offense instruction unless he was being tried in a *capital case*. *See Carney v. Fabian*, 487 F.3d 1094, 1097 (8th Cir. 2007) ("There is no constitutional requirement that lesser-included offense instructions be given in noncapital cases.").[16] It is well-settled federal law that, *where the death penalty is not imposed on a defendant charged with capital felony murder in Arkansas*, an instruction on the lesser-included offense of first-degree felony murder is *not* constitutionally required. *Pitts v. Lockhart*, 911 F.2d 109 (8th Cir. 1990) (holding no constitutional violation occurred where petitioner

---

[16] In *Beck v. Alabama*, 447 U.S. 625 (1980), the Court held that a *death sentence* may not be imposed if a jury is not permitted to consider a verdict of guilt on a lesser-included offense, *and* there is sufficient evidence to support the lesser-included offense.

was convicted under the Arkansas capital felony murder statute and received a life sentence, without parole, after the trial court failed to give an instruction on the lesser-included offense of first-degree felony murder).[17] Thus, even if AMCI 2d 302 somehow "prevented" the jury from finding Kellon guilty of the lesser-included offense of first-degree murder unless it first acquitted him of capital felony murder, it still would not rise to the level of a due process violation cognizable in a § 2254 habeas action.

The Arkansas Supreme Court's rejection of Kellon's challenge to the jury instructions, on direct appeal, *Kellon*, 2018 Ark. 46, at 6, 538 S.W.3d at 209, was not contrary to, or an unreasonable application of, "clearly established Federal law." Additionally, the jury instructions challenged by Kellon in his habeas Petition do not implicate or support a claim that his due process rights were violated.  Accordingly,

---

[17] In *Pitts v. Lockhart*, 911 F.2d 109 (8th Cir. 1990), the Court considered a question left unanswered in *Beck*: Is a case considered "capital" or "noncapital" if the death penalty is sought but a life sentence is imposed?  The Court held that such a case must be deemed "noncapital" for purposes of constitutional analysis.  *Id.* at 112.  Of course, in this case, the state waived the death penalty, making it absolutely clear Kellon was being prosecuted in a "noncapital" case.

Kellon was convicted under the Arkansas capital felony murder statute, but the prosecutor had *waived* the death penalty.  In *Pitts*, the prosecutor asked the jury for the death penalty, but the jury elected to give Pitts life, without parole.  In his habeas Petition, Pitts argued his due process rights were violated because the trial court refused to give an instruction on the lesser-included offense of first-degree felony murder.  The Eighth Circuit rejected that argument: "[T]he failure to give a lesser included offense instruction in a noncapital case rarely, if ever, presents a constitutional question[.]"  *Id.* This means, *even if* the jury instruction given by the court in Kellon's trial had *not* included a lesser-included offense instruction on first-degree murder, it would "not rise to a level of constitutional significance" under the Court's holding in *Pitts*. *Id.*

the Court concludes that Claim 5 is without merit and should be dismissed, with prejudice.

**D.    Arkansas State Courts Reasonably Adjudicated Kellon's Challenge to the Voluntariness of His Confession, Which Did Not Violate His Fifth Amendment Rights**

Kellon argues that his confession was involuntary because it was made based on: (1) false promises of "favor and benefit" by the two detectives conducting his custodial interrogation; and (2) the detectives exploited his vulnerability, *i.e.*, his mental condition at the time of questioning and inexperience with interrogations. *Doc. 12 at 6.* Respondent argues this claim is without merit and that the Arkansas Supreme Court's decision rejecting this claim was reasonable. *Doc. 9 at 7.*

Prior to trial, the court held an evidentiary hearing on Kellon's motion to suppress his confession. *Tr. Trans. Vol. 2 at 405-524.* After hearing evidence, the court concluded that Kellon's confession was knowing and voluntary. In support of its decision, the court made the following specific findings: (1) Kellon was properly warned of his *Miranda* rights and understood them; (2) Kellon responded appropriately to the questions, rarely requested clarification of the questions, and rarely asked for questions to be repeated; (3) during the interrogation, Kellon remembered details of the crime that were consistent with the surveillance video; (4) although Kellon did not articulate very well during the interrogation, he did not slur

or drag his speech;[18] (5) both detectives involved (Detective McAfee and Detective Freeman) testified that Kellon did not appear to be under the influence of any drugs;[19] and (6) nothing in the record demonstrated that the detectives made any threats or promises or resorted to coercion in obtaining Kellon's confession. *Id. at 519-524.*

On direct appeal, the Arkansas Supreme Court affirmed the trial court's ruling that Kellon's confession was voluntary:

> Police detained Kellon after finding him driving a car identified on the surveillance footage from the scene of the crime. Kellon was taken to the Pine Bluff Police Department, where he was questioned by two detectives. During the course of approximately one hour of interrogation, Kellon confessed to killing Singh and offered to assist the police in recovering the murder weapon.
>
> . . .
>
> [B]efore Kellon's confession to the murder, the officers made several comments about the desirability of telling the truth. They said that Kellon could "get help" for any problems he was going through, that the officer could "go and tell the judge, this man came in here. He was truthful. He was

---

[18] At the suppression hearing, the court criticized the prosecutors and defense attorneys for not putting forward any evidence of Kellon's education. Nevertheless, based on Kellon's recorded statement and signed *Miranda* waiver, the court concluded that he understood his *Miranda* rights. Kellon now claims to have only a seventh grade education. *Doc. 12 at 13.* While his level of education is a relevant factor to consider in evaluating whether his confession was voluntary, it is not, standing alone, dispositive. *See United States v. Makes Room*, 49 F.3d 410, 415 (8th Cir.1995) (explaining that a defendant's eighth grade education, among other factors, did not make his confession involuntary where he clearly understood his rights).

[19] In his state court challenge to the voluntariness of his confession, Kellon claimed he was under the influence of marijuana and PCP. In this habeas action, Kellon has *not* made that claim. The trial court found, based on the audio recording of Kellon's statement and the detectives' testimony, that Kellon was not under the influence of drugs during his post-*Miranda* interrogation. This finding of fact was implicitly adopted by the Arkansas Supreme Court in holding that Kellon's confession was knowing and voluntary. Accordingly, it is now entitled to deference under § 2254(d).

trying to be a provider for his family. He was trying to help someone that, you know, he considered as a [sic] family. I can get on the stand and say that versus saying, he came up in here and he flat out lied to me." They indicated that they "give opportunity" and that coming clean might allow him to "start over again" and become a better person. Kellon confessed between this and the second group of comments in which the detectives claimed they did not want Kellon to lead them to the murder weapon for "any other reason" than to prevent the gun from remaining on the streets and causing an unsafe situation.

Kellon argues that these statements were unambiguous promises of leniency, but this contention is simply not supported by our case law. For promises to be considered unambiguous offers of leniency, we have demanded a degree of specificity lacking here. In *Teas v. State*, 266 Ark. 572, 574, 587 S.W.2d 28, 29 (1979), we reversed the trial court's decision not to suppress a confession after reviewing evidence that the detaining officers offered to reduce the defendant's bond and to make recommendations to the prosecutor up to and including dismissal of the case. These were specific promises in exchange for the defendant's confession and cooperation in other investigations. In *Freeman v. State*, 258 Ark. 617, 620-21, 527 S.W.2d 909, 911 (1975), we similarly reversed when a deputy prosecuting attorney claimed he had no authority to make promises but nevertheless speculated with undue specificity that, if the detained individual had committed a crime, it was "probably one that would not result in more than 21 years' incarceration." . . . In contrast, the statements in this case are much closer to those in *Goodwin v. State*, 373 Ark. 53, 62, 281 S.W.3d 258, 266 (2008). There, the officers told the defendant that it was "best for [the defendant] to be truthful" and that they would convey news of the defendant's honesty to the prosecutor. We held that such general promises were, at most, ambiguous. . . . So too here. The detectives made no specific representations to Kellon. In context, the comments read more as general exhortations to be truthful for the sake of Kellon's own conscience than as promises to exercise official authority.

As in *Goodwin*, because the statements were plausibly ambiguous, we proceed to the second step of determining whether Kellon was particularly vulnerable to "having his will overborne." . . . Here as well, though, we find no cause for concern sufficient to reverse the judgment of the trial court. Going through the factors listed above, Kellon was 23–well into adulthood– at the time of the confession. He was Mirandized shortly before questioning began, and his confession came less than halfway in to his approximately one-hour interrogation. The trial court commented on Kellon's poor articulation, but swiftly added that noticing an unfamiliar speech pattern

> alone was an insufficient reason to reach a conclusion about Kellon's intellect. While Kellon had no prior experience with the criminal-justice system, the test is holistic; inexperience with interrogation alone does not mandate a conclusion that the defendant is particularly vulnerable. . . . Reviewing the totality of the circumstances, we cannot say that the trial court clearly erred in refusing to suppress Kellon's confession.

*Kellon v. State*, 2018 Ark. 46, 1-4, 538 S.W.3d 206, 207-208.

Whether a confession is involuntary, and thus inadmissible at trial, is judged by the totality of the circumstances, including the specific interrogation tactics employed, the details of the interrogation, the age of the defendant, his level of education and intelligence, and the duration of the questioning. *Battle v. Delo*, 19 F.3d 1547, 1563 (8th Cir. 1994) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-226 (1973)). However, the ultimate test is whether the confession was "the product of an essentially free and unconstrained choice by its maker" or whether "his will has been overborne and his capacity for self-determination critically impaired." *Schneckloth*, 412 U.S. at 225-226.

The "totality of the circumstances" standard recited and applied by the Arkansas Supreme Court, under Arkansas law, is consistent with controlling decisions by the United States Supreme Court, which means it was *not* "contrary to" applicable federal law under § 2254(d)(1). *See Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (it is not necessary for the state court to cite, or even be aware of, applicable United States Supreme Court opinions, as long as "neither the reasoning nor the result of the state-court decision contradicts them"). With regard to findings of fact

24

made or adopted by the Arkansas Supreme Court on direct appeal, Kellon must demonstrate "by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." *Whitehead v. Dormire*, 340 F.3d 532, 536 (8th Cir. 2003).

The Court has reviewed the audio recording of Kellon's interrogation and the record of the suppression hearing. Importantly, Kellon, a 23 year-old adult, was appropriately warned of his *Miranda* rights immediately before the detectives questioned him.[20] *Dickerson v. United States*, 530 U.S. 428 (2000) ("Cases in which a defendant can make a colorable argument that a self-incriminating statement was

---

[20] At the beginning of the interrogation, Detective McAfee informed Kellon of his *Miranda* rights, which he acknowledged both verbally and in writing:

| | |
|---|---|
| Det. McAfee: | Okay, before I ask you any questions you must understand you rights, those are being your Miranda Rights. You have a right to remain silent. Do you understand? I need a verbal yes or no. . . |
| Kellon: | Yes. |
| Det. McAfee: | As filling out the form. And your initials there. Anything you say can and will be used against you in court. Do you understand? |
| Kellon: | Yea. |
| Det. McAfee | You have a right to have an attorney present before making any statement, and you . . . may talk with him during questioning. Do you understand? |
| Kellon: | (inaudible) |
| Det. McAfee: | If you cannot afford an attorney one will be provided for you before you're asked any questions if you so desire. Do you understand? |
| Kellon: | Yea. |
| Det. McAfee: | If you want to answer questions now without a lawyer present you may do so, however, you have the right to stop the questioning at any time. Do you understand? |
| Kellon: | Yea. |

*Kellon Statement 1 at 0:50-1:52*; *see also*, *Miranda Rights Form executed by Kellon* (June 23, 2015), *Tr. Trans. Vol. 2 at 629*.

'compelled' despite the fact the law enforcement authorities adhered to the dictates of *Miranda* are rare.").

Furthermore, Kellon's confession did not come at the end of an extended, high pressure interrogation.  Rather, less than twenty minutes after receiving his *Miranda* warnings, Kellon confessed to murdering Singh and robbing the Big Red convenience store and did so *in detail*, *without suggestive questions or any explicit promises* by the two detectives questioning him:

> I killed a man. . . I didn't know what I was doing. I just know I had to get to the register. . . I pulled up. . . It was a white truck there . . . and another white truck pulled up behind me. . . And there was a little Toyota, white. I waited on . . .basically all them to leave. . . Told Sha'Quille, I don't want him to have nothing to do with it. Because I know his brother. I didn't want anybody to be mad at me. He got out the car anyway. . . Said I'm fixin' to check it out. . . He went in there, bought whatever he bought. By the time he came out, I was looking side to side, side to side, making sure the coast was clear. Dude was outside smoking a cigarette. First thing that came to my mind was I know I'm gonna get this money. Dude get out the way. So I did what I did. Got him out the way. . . I shot him. . . I shot three times. . . Ran in the store, ducked down, make sure wasn't nobody shoot back at me. Looked to my left, looked to my right. I ain't see nobody. Got the money out of the register. Fumbled, trying to push the fucking buttons, that shit ain't work, so I seen the key was in there, and if weren't for that key, I would've shot a man for nothing.

*Kellon Statement 1 at 21:28-24:01*.[21]

---

[21] The surveillance video confirms Kellon's account, including the white vehicles in the parking lot before the crime, the number of times he shot Singh, and using the key to open the cash drawer. *Surveillance Video 1 at 19:20:44-19:24:42*; *Surveillance Camera 6 at 19:25:21-19:25:53*. Kellon described the clothing and mask he wore during the crime, which is also confirmed by the surveillance video.  *Kellon Statement 1 at 24:43-25:26*.

In the short time before obtaining Kellon's confession, both Detective McAfee and Detective Freeman used sympathy and understanding as an interrogation technique. However, neither detective resorted to any threats of physical violence, intimidation, trickery, or promises to exercise official authority prior to Kellon's confession to the murder and robbery.

Kellon characterizes the following statements by the detectives as "promises of favor or benefit":

> "This is at a point in time that you can do whatever the consequences . . . and start over again."

> "We are not here to hurt you. We have to stick together. I wouldn't put no other person up in here to talk to you but us, because we have understanding hearts and we understand what we go through in general[;]"

> "If there's some problems that you are going through, whatever the case maybe you can get help."

> "I can go and tell the judge, this man came in here he was trying to help someone he considered family."

*Doc. 12 at 2.* However, the Arkansas Supreme Court specifically addressed those statements by the detectives and reasonably concluded they were ambiguous, at best, and "more general exhortations to be truthful for the sake of Kellon's own conscience than as promises to exercise official authority." *Kellon*, 2018 Ark. 46, at 4, 538 S.W.3d at 208.

Moreover, those statements, whether viewed in isolation or in context, do not compel the conclusion that Kellon's confession was involuntary. *See United States*

*v. Astello*, 241 F.3d 965 (8th Cir. 2001) (confession of an *18 year-old* defendant, who ultimately received a life sentence, held voluntary despite three-hour interrogation in which law enforcement officials implied that he would receive a sentence of less than life for telling the truth); *see also U.S. v. Kilgore*, 58 F.3d 350, 353 (8th Cir. 1995) (promise of leniency does not necessarily make a statement involuntary); *Sumpter v. Nix*, 863 F.2d 563, 565 (8th Cir. 1988) (confession was voluntary despite allegations that interrogators made implied promises of leniency).

Kellon's remaining allegations relating to "promises of favor or benefit" by the detectives do not affect the voluntariness of his confession because the record conclusively demonstrates that those statements could have only occurred *after* he had already confessed to the murder and robbery.[22]  *Tr. Trans. Vol. 2 at 503-504* (emphasis added).

Finally, Kellon claims vulnerability based on his "emotional state" and lack of prior experience with the criminal system. While those are relevant factors to

---

[22] Kellon takes issue with Detective McAfee's statement that she only wanted Kellon's help in retrieving the murder weapon to prevent the gun from falling into the hands of a kid. Importantly, Detective McAfee's statement occurred at the 27:22 minute-mark of Kellon's first recorded statement – several minutes after Kellon confessed to the murder and robbery (21:28-24:01).

Likewise, Kellon claims that "around the same time" he was using Detective McAfee's iPhone to help in retrieving the murder weapon, one of the detectives told him, "[i]f I could cooperate that they would tell the judge that I was truthful and possibly give me reduced charges." *Id. at 503-504*. Both detectives denied making such a statement, and no such statement occurred on the recordings. *Id. at 412, 480*. However, to the extent such a statement was made, it would have been *after* Kellon's confession.

consider in determining the voluntariness of a confession, neither factor is dispositive. *See LaRette v. Delo*, 44 F.3d 681, 688-689 (8th Cir. 1995).

After Detective McAfee read Kellon his *Miranda* warnings, she asked if Kellon was feeling okay, and he responded, "not really." She then asked, "Is there anything wrong . . .with you or . . . are you medically ill, anything of that nature?" He responded that "nobody ever told me I was, but I do feel like I got problems in the back of my head." *Kellon Statement 1, 2:25-2:50*. Kellon never elaborated any further on the point. During the interview, Kellon was understandably emotional, given the seriousness of his crimes, and spoke through tears at times. However, he did not cry uncontrollably or sound so overcome with emotion during his confession that he was unable to exercise his own free will.[23]

Finally, Kellon claims his statement "confirmed that with good intentions Kellon could be induced by anyone by lack of experience or not knowing . . . [b]ecause Kellon does not articulate well on things that have been absent in his life. Only when Kellon goes through situations only then could he become familiar, then he could articulate." *Doc. 12 at 6*. Kellon's lack of prior experience with the

---

[23] It is telling that Kellon's attorneys never requested that Kellon receive a mental evaluation. Because the state initially pursued the death penalty against Kellon, the trial court appointed two attorneys, who specialized in capital cases from the Arkansas Public Defender Commission, to represent him. *Tr. Trans. Vol. 2 at 380-384*. It defies credulity to believe that, if there was a good faith basis for believing that Kellon suffered mental or intellectual impairments at the time of the crime *or* his confession, his attorneys would not have filed a motion for a mental health evaluation prior to trial.

criminal justice system does not move the needle on his claim of involuntariness given the state court's finding that he understood his right to remain silent and that anything he said could and would be used against him in court.

The Arkansas Supreme Court's adjudication of Claim 6 was not contrary to, or an unreasonable application of, "clearly established Federal law, as determined by the Supreme Court of the United States[,]" nor did it involve an unreasonable determination of facts in light of the state court record. 28 U.S.C. § 2254(d). Further, in his habeas papers, Kellon has not demonstrated by clear and convincing evidence that his will was overborne and his capacity for self-determination was critically impaired to such an extent that his confession was involuntary. Accordingly, Claim 6 is without merit and should be dismissed, with prejudice.

### E.   Kellon's Pending Motions

Because Kellon's habeas Petition should be dismissed, the Court further recommends that Kellon's pending Motion for Affirmative Relief (*Doc. 34*), Motion to Appear for Evidentiary Hearing (*Doc. 36*), Motion to Appoint Counsel (*Doc. 37*), Motion for Reconsideration (*Doc. 38*), and Motion for Summary Judgment (*Doc. 39*) should also be denied, as moot.[24]

---

[24] The Court has previously denied other Motions for Evidentiary Hearing (*Doc. 30*) and Appointment of Counsel (*Docs. 6 and 13*).

## IV.  Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1.      This 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus, *Doc. 1*, be DENIED and this case be DISMISSED, WITH PREJUDICE.

2.      A Certificate of Appealability be DENIED. *See* 28 U.S.C. § 2253(c)(1)-(2); Rule 11(a), Rules Governing § 2254 Cases in United States District Courts.

3.      Kellon's Motion for Affirmative Relief (*Doc. 34*), Motion to Appear for Evidentiary Hearing (*Doc. 36*), Motion to Appoint Counsel (*Doc. 37*), Motion for Reconsideration (*Doc. 38*), and Motion for Summary Judgment (*Doc. 39*) all be DENIED as MOOT.

DATED THIS 19th day of November, 2019.

_____
UNITED STATES MAGISTRATE JUDGE